1

1                                    THE UNITED STATES DISTRICT
COURT
                                     FOR THE DISTRICT OF NEW JERSEY
2                                    CRIMINAL NO. 05-318 (WGB)

3        - - - - - - - - - - - - - - - - - -x
         UNITED STATES OF AMERICA,        :
4                                         :
                        -vs-              :     TRANSCRIPT
5                                         :        OF
         ERIK SANCHEZ,                    :     PROCEEDINGS
6                                         :     (SENTENCE)
                                          :
7                         Defendant.      :
         - - - - - - - - - - - - - - - - - -x
8

9                                    Newark, New Jersey
                                     August 3, 2006
10

11
         B E F O R E:    HONORABLE WILLIAM G. BASSLER,
12                            Senior U.S.D.J.

13
         A P P E A R A N C E S:
14
                             CHRISTOPHER J. CHRISTIE, ESQ.,
15                           United States Attorney,
                             BY:  MELISSA JAMPOL, ESQ.,
16                           Assistant United States Attorney
                             For the Government
17
                             RICHARD COUGHLIN, ESQ.,
18                           Federal Public Defender
                             BY:  DONALD MC CAULEY, ESQ.,
19                           Assistant Federal Public Defender
                             For the Defendant
20

21
_____
         Pursuant to Section 753 Title 28 United States Code, the
22       following transcript is certified to be an accurate
record
         taken stenographically in the above entitled proceedings.
23

24     _____
       JOHN KEVIN STONE, C.S.R.
25     Official Court Reporter



                    JOHN KEVIN STONE, CSR

2

```
 1                THE COURT:  Good morning everybody.

 2                May I have appearances, please.

 3                MS. JAMPOL:  Good morning, Your Honor.

 4                Assitant United States Attorney Melissa Jampol

 5      appearing on behalf of the Government.

 6                MR. MC CAULEY:  Morning, Your Honor.

 7                Donald McCauley, Assistant Federal Public
Defender,

 8      appearing on behalf of Erik Sanchez.

 9                THE COURT:  Mr. Sanchez, good morning.

10                THE DEFENDANT:  Morning, sir.

11                THE COURT:  Let me ask you this.  Have you read
the

12      presentence report?

13                THE DEFENDANT:  Yes, sir.

14                THE COURT:  And, counsel, have you reviewed the

15      presentence report with your client?

16                MR. MC CAULEY:  Yes, Your Honor.

17                THE COURT:  I adopt the presentence report's

18      findings as the court's.

19                Let me, before I forget, advise the defendant
that

20      he has the right to appeal the conviction if he believes
the

21      guilty plea is somehow unlawful or involuntarily, or
there's

22      some other fundamental defect of the proceedings that
wasn't
```

23    waived by the guilty plea.

24          Mr. Sanchez, you also have a statutory right to

25    appeal your sentence under certain circumstances,

JOHN KEVIN STONE, CSR

3

1       particularly if you think the sentence is contrary to
law.

2       You may have waived those rights as part of the plea

3       agreement -- you may have entered into a plea agreement

4       which waives some or all of your rights given the
sentence

5       itself.  Those rights waivers are generally enforcible,
but

6       if you believe the waiver is in unenforcible, you can

7       present your theory to the federal court.

8              At any rate, I advise you you have the right to

9       appeal in forma pauperis, and the court will prepare and

10      file a notice of appeal upon your request.

11             I further advise you that with few exceptions,
any

12      notice of appeal must be filed within ten days of entry
of a

13      judgment.

14             Counsel, I don't believe we have any dispute
over

15      the guideline range.  The total offense level is 21,

16      criminal history category is five, which brings the
sentence

17      range to 70 to 87 months.

18             MR. MC CAULEY:  Yes, Your Honor.

19             MS. JAMPOL:  Yes, Your Honor.

20             THE COURT:  Mr. McCauley, I'll hear you on your

21      application.

22          You can be seated.

23          MR. MC CAULEY:  Your Honor, there was one

24     correction to the presentence report that I neglected to

25     communicate to the court.  It's the date of birth.  It
has


JOHN KEVIN STONE, CSR

4

1        his date of birth as 2-16-59, it's really 2-16-69.

2                    THE COURT:  2-16 --

3                    MR. MC CAULEY:  69.

4                    THE COURT:  69:

5                    MR. MC CAULEY:  And he's 36 years old, not 46.

6                    THE COURT:  Okay.  Thank you.

7                    MR. MC CAULEY:  Apologize for that.

8                    THE COURT: All right.

9                    MR. MC CAULEY:  Your Honor, you will note that
the

10        guidelines are advisory, and I'm asking that the court

11        sentence below the otherwise advisory guidelines for the
70

12        to 87 months, essentially; that he's basically a
deportable

13        alien, once he completes whatever sentence Your Honor

14        imposes, he will then be transferred to the custody of
the

15        Immigration and Naturalization Service, where he'll serve

16        another six months prior, before he gets deported.

17                    Also, because of his status as an illegal alien,

18        he's not eligible for a halfway house the last six
months.

19                    THE COURT:  Right.

20                    MR. MC CAULEY:  So just by virtue of his alien

21        status, he does a year more than any other defendant who

22        would be at level 21, category five.  Meaning any citizen

23     doing any crime that yields a level 21 and a category
five

24     has this range, but they have the benefit of doing six

25     months less in a halfway house, and then don't face the

JOHN KEVIN STONE, CSR

5

1     subsequent incarceration.

2          THE COURT:  Right.

3          MR. MC CAULEY:  So that no where in the guidelines

4     is that accounted for in the manuals.

5          THE COURT:  Right.

6          MR. MC CAULEY:  I'd ask Your Honor to take that

7     into consideration.

8          And then when you look at the 3553(a) factors --

9          THE COURT:  Would you excuse me just a second.

10         ( Pause ).

11         THE COURT:  I'm sorry, Mr. McCauley.  Stay with me.

12         Go ahead.

13         MR. MC CAULEY:  When we look at the 3553(a)

14     factors, you know 3553(b) directs the court by statute not

15     to impose as a matter of law anything beyond what is

16     necessary to achieve the four traditional goals of

17     sentencing.  And all of those goals I think are primarily

18     directed toward citizens, people that are going to remain in

19     our society, people that are going to walk our streets

20     again.  We're interested that they be deterred, we're

21     interested that they be rehabilitated, and we're interested

22     in retribution.  I think those goals are less obtained in

23      the case of an alien who can never come back here.   And

24      never be back here.

25              Now, he did come back illegally.   And that's the

JOHN KEVIN STONE, CSR

6

1     offense in this case.  But I'm saying it's been a long road

2     for him.  But he's got the message, knowing he can't come

3     back here again.  He was under a misimpression, and

4     apparently it's a misimpression throughout the Central

5     American, Latin American countries, that if you come back

6     and you behave, you don't get arrested, and you have a wife

7     who's a citizen, have children who are citizens, that some

8     day you'll be able to stay here.  That's a total fallacy.

9     But that was his impression.

10          He knows it loud and clear now that that can't

11     happen.  These deportation laws are mandatory.  But that

12     explains why he thought he could come back.

13          And the Congress even contributes to that

14     impression, I suggest, in the last two years, in talking

15     about all immigration reform, and whether this provision is

16     going to amnesty or it's going to be effective amnesty, and

17     that word goes out through the world, and it's a

18     misimpression.  It doesn't exist.

19          But it's loud and clear now.  16 months after his

20     arrest in this case he knows he can't come back.  He's

21     looking to make a life in Spain, hopefully, where his

22     children who were citizens can visit with him.

```
      23              So I think when Your Honor looks, we have
someone,

      24      why incarcerate him for six years, when, at that great

      25      expense, needless expense, when you could impose
something
```

JOHN KEVIN STONE, CSR

7

1    less, and still achieve those four goals under 3553.

2         And taking into consideration the hard time he's

3    done, my papers say 13 months, that was when I began

4    drafting this.  It's actually 16 months.  I know the

5    Government is going to stand up and say, well, at least
the

6    three months were McCauley's fault, and I accept the

7    responsibility for that.

8         But even the 13 months, it's a hell there in

9    Passaic County.  The Government criticizes me that the

10   exhibits I attached, especially I guess from the Sheriff

11   Speziale, who runs that building, are dated.  Sheriff

12   Speziale said nothing to contradict those documents in
all

13   of this time.

14        We also know six months ago the Department of

15   Homeland Security canceled a contract with the Passaic

16   County Jail because of the conditions under which their

17   people were being housed.  They couldn't tolerate
anymore.

18   There were a number of civil litigations going on, and it

19   was easier to cancel the contract than try to defend the

20   conditions at that jail.

21        I would ask Your Honor to consider all of that
and

22   sentence below the guidelines.  He's never coming back
here.

23      And whatever sentence Your Honor imposes, I'd ask that
you

24      recommend that be designated to serve his time at FCI

25      Beaumont, Texas.  He has an elderly father and mother who


JOHN KEVIN STONE, CSR

8

```
 1    live in Houston.  And that is the closest facility to
 2    Houston.  They will be able to visit him for whatever
period
 3    of incarceration he has.  Because it's not likely they'll
be
 4    able to visit him once he's deported, never to return
here.
 5         Thank you.
 6         THE COURT:  You're welcome.
 7         Before I impose sentence, Mr. Sanchez, is there
 8    anything you would like to say?
 9         THE DEFENDANT:  Yes, sir.
10         First of all, I would like to apologize to you
and
11    to this country for all the offense I have done.  And my
12    original purpose was to be reunited with my kids and
wife.
13    I took that chance, and I understand that I have to be --
I
14    got to be punished.  And I also, you know, would like to
say
15    that this 16 months that I've been in Passaic County
Jail,
16    it put me, you know, sick.  And I'm completely destroyed,
17    you know, by being in that count --
18         THE COURT:  By what?
19         THE DEFENDANT:   -- by being in that Passaic
20    County.  That's all I got to say, sir.
21         THE COURT:  All right.
```

22          Please be seated.

23          The Government have anything to add?

24          MS. JAMPOL:  Your Honor, I addressed many of these

25    arguments in my first submission to the court.


JOHN KEVIN STONE, CSR

9

1               THE COURT:  Right.

2               MS. JAMPOL:  Which addresses a number of these

3       things.

4               Just to highlight some things, in response to
Mr.

5       McCauley's comments here today.  The basic gist of the

6       defendant's application is that he should be rewarded
before

7       this court for being an illegal alien.  That is his view
in

8       his first request, stating that he would serve additional

9       time of six months, and that he's not eligible for a
halfway

10      house as an alien status.  And the Government's response
to

11      that -- and the second point that Mr. McCauley makes, is

12      nowhere in the guidelines is this particular factor

13      addressed, and there's two responses I want to make to
that.

14              The first is that as Your Honor well knows, over

15      the 18 year history of the sentencing guidelines, that
each

16      specific offense is specifically examined to determine
where

17      on the sentencing guideline range, which level category

18      offense should it be determined, should the defendant --

19      should the defendant meet that particular area.  And the

20      defendant in this particular case started off as a level

21      eight, but received a 16 point enhancement due to his

22     criminal history, and the fact that he'd been previously

23     deported.  That, in and of itself, is -- shows the
careful

24     planning the guidelines have taken to take into

25     consideration the defendant's particular status.  And as

JOHN KEVIN STONE, CSR

10

1     such, I would urge Your Honor to look at him not in a
realm

2     of all individuals who are classified as level 21
offenders,

3     whether they be individuals who were carrying handguns

4     illegally as convicted felons, or as any other narcotics

5     offense, but to look at the defendant in the category of

6     individuals who have been previously deported and who
have

7     illegally re-entered this country.  And as such, it is
the

8     Government's contention that the guidelines do take this

9     into consideration when determining which level category
the

10    defendant would fit in.  And as such, it is the
Government's

11    position that the guideline sentence in this particular
case

12    is a reasonable sentence, as I indicated in my August 1st

13    submission.

14          The second is in response to Mr. McCauley that
no

15    where in the guidelines does it take into consideration
that

16    the defendant is a deportable alien.  And that is because
it

17    is a specific factor that is specifically prohibited
under

18    the sentencing guidelines.

19          Under the guideline regime, as Your Honor knows,

20    the defendant's alien status and his status is something

21    that the court was not permitted to take into account.
Of

22    course, under the Booker regime and under Section 3558,
that

23    is something Your Honor is entitled to take into

24    consideration.

25         But it is the Government's contention, as I
stated

JOHN KEVIN STONE, CSR

11

1    in my memorandum to the court, that it actually should be

2    looked at the other way.  It should be looked at in one

of

3    the goals of Section 3553(a), this action of deterrence

and

4    this action of the need to promote respect for the law.

5         This particular defendant does not stand before

6    this court having been deported once.  He was deported on

7    two separate occasions.  On two separate occasions he

8    appeared before an immigration judge and was specifically

9    warned that he was not permitted to re-enter this country

10   without specific authorization by the Attorney General.

11        There's paperwork that's been turned over to the

12   defense as part of the discovery that indicates that the

13   defendant specifically swore that he understood this

14   particular ruling by the court.  And in both cases the

15   defendant promptly ignored the ruling of the court, did

what

16   he wanted, and re-entered the country.  But it's not only

he

17   re-entered the country, Your Honor.  It's once he re-

entered

18   the country he continued to commit crimes.

19        The defendant has indicated to Your Honor that

the

20   reason he re-entered this country was to be reunited with

21   his wife.  But as the PSR makes very clear, he not only

22      reunited with his wife, he then committed crimes against his

23      wife.  And he was arrested in Texas after a domestic

24      altercation involving his wife.  And as the PSR makes clear,

25      there were numerous restraining orders involving him and his


JOHN KEVIN STONE, CSR

12

1    wife, and if Your Honor would like me to point out the

2    specific statutes in the PSI that make it clear.

3              So the defendant has managed to rack up a
criminal

4    history category of five, which is for all the criminal

5    offenses that he's done in this case in this country.

6              Additionally, the defendant's conduct while in
this

7    country indicates the fact that he was charged with death
by

8    auto in Union County in -- and he fled to Texas, as the
PSI

9    makes clear.  And it took a numbers of years for the

10   authorities to locate him.  And he had to be extradited
from

11   Texas back to Union County here in New Jersey to face
those

12   charges.  By that point, the case was a number of years
old

13   and the defendant was sentenced to five years
incarceration

14   after that particular offense.  That was the offense that

15   was one of the two offenses that served the basis for his

16   first deportation.

17             So it's the Government's contention here that
the

18   defendant clearly has shown no respect for the laws of
this

19   country while he's in this country and, rather than being

        20      rewarded for his alien status, that under the factors
listed

        21      in Section 3553(a), the defendant should be held

        22      accountable.

        23          The second, Your Honor, is the defendant's
argument

        24      that he has had a harsh condition in Passaic County Jail,

        25      and I'm sure this is not the first application Your Honor




                        JOHN KEVIN STONE, CSR

13

1     has seen based on this particular submission.  And I'm not

2     going to stand up here and claim that staying in Passaic

3     County Jail is the same as staying in the Waldorf.  Because

4     that would not be the truth.

5          But the bottom line is, Your Honor, is that it is a

6     correctional facility.  And as I've indicated to Your Honor

7     in my submission, the defendant hasn't proven that his

8     experience there was in any way out of the ordinary.  It

9     might not have been pleasant, and I'm not going to stand

10    here and defend --

11         THE COURT:  Please don't do that.  I've had so many

12    defendants who have consistently over the years told me of

13    the conditions in that jail.  They're intolerable.

14        MS. JAMPOL:  Yes.  And I've been seeing an increase

15    in those motions, and I've been speaking to my counterparts

16    to relay that.  So I won't do that before Your Honor.

17        What I will do is point to the case law in our

18    circuit, as I do, that indicates that the defendant has to

19    prove that his stay was out of the ordinary.

20        THE COURT:  It is out of the ordinary.  I can take

21      judicial notice of that.  Because in the years I've been

22      sitting here meting out sentences, I had affidavits --
now I

23      don't have one here, but I certainly can take judicial

24      notice that the conditions in that facility are
intolerable.

25      I had a defense attorney come up from the south and he
said

JOHN KEVIN STONE, CSR

14

1      he's never seen anything like it yet in his practice.

2      Anyway, it's not your fault.

3              MS. JAMPOL:  Obvious --

4              THE COURT:  But --

5              MS. JAMPOL:  -- and obviously the message is

6      something that our office is looking at, this issue.

7              THE COURT:  Well, you better look at it well.

8              MS. JAMPOL:  I will impart that.  I have had

9      discussions with my supervisor.

10             THE COURT:  It's not right.  It's not human.
It's

11     just not fair to put somebody in that kind of a facility.

12             MS. JAMPOL:  The second argument I'm going to
make,

13     and take it for what it's worth, Your Honor, is that the

14     length of the defendant's stay at Passaic was not
unusually

15     long.  And I myself have handled -- and you're looking

16     skeptical, but I'm going to keep on making the argument,

17     Your Honor, is I've had cases where defendants have been
in

18     that jail for a much longer period of time.

19             THE COURT:  So have I.

20             MS. JAMPOL:  For example, a case I just finished

21     before Judge Cavanaugh, there were defendants in there
for

22     over three years.

23          THE COURT:  Well --

24          MS. JAMPOL:  So the defendant's length of stay,

25     based on other cases in this district, was not particularly


JOHN KEVIN STONE, CSR

15

| 1 | long within that facility.  And that's my argument on that |
| 2 | point. |
| 3 | And I see where Your Honor is going with it, but |
| 4 | thank you for affording me an opportunity to make an |
| 5 | argument on this particular topic. |
| 6 | THE COURT:  All right. |
| 7 | MS. JAMPOL:  Thank you, Your Honor. |
| 8 | THE COURT:  Let me address the defendant's |
| 9 | application for downward departure from the guidelines. |
| 10 | I'm denying that application on the guidelines, |
| 11 | because I recognize I have the discretion to downward |
| 12 | depart.  And I choose not to exercise that. |
| 13 | In fashioning a sentence under the Booker regime, |
| 14 | which is reasonable under the circumstances, under Booker |
| 15 | I'm required to take into consideration the factors itemized |
| 16 | in 18 U.S. Code 235 (3)(a), that is, the nature and |
| 17 | circumstances of the offense; history and characteristics of |
| 18 | the defendant; the need for a sentence which will be |
| 19 | sufficient, but not greater than necessary to reflect the |
| 20 | seriousness of the offense; to promote respect for the law; |
| 21 | to provide just punishment; to afford adequate deterrence to |

22      protect the public from further crimes of the defendant;
and

23      to provide the defendant with needed educational,

24      rehabilitational training.

25          Realistically, what we're talking about here is
a

JOHN KEVIN STONE, CSR

16

1     sentence that is sufficient but not greater than
necessary.

2     There is a lot to be said in support of the Government's

3     position here, in view of the criminal history category,
in

4     view of twice being deported to El Salvador.  The message

5     doesn't seem to be getting through to you, Mr. Sanchez.

6          On the other hand, I'm not sure that we need to

7     impose a sentence of 70 months.  To me that is
particularly               .

8     harsh, in view of the amount of time that was spent in

9     Passaic County Jail.  I don't care what you say, the

10    conditions that have been reported to me over the years

11    indicate to me that it's absolutely intolerable, and to

12    impose 70 months on top, or even giving reflection to --
to

13    impose a sentence in light of the amount of time this

14    defendant spent in Passaic County Jail isn't necessary to

15    provide adequate deterrence.  Any amount of time in
Passaic

16    County Jail will provide that.

17         In terms of reflecting the seriousness of the

18    offense, I don't think 70 months is necessary to do that
or

19    promote respect for the law.  He would be given credit

20    anyway for the amount of time spent there.

21         I'm going to reduce the sentence by 24 months to
46

22    months, from 70 to 46.  That, in my opinion, almost four

23    years, reflects the seriousness of the offense, promotes

24    respect for the law, provides just punishment, and meets
the

25    statutory factors.


                    JOHN KEVIN STONE, CSR

17

1          So, Mr. Sanchez, I don't know whether you got
the

2     message or not, but the next time around you could be

3     looking at even more than 70 months.  Depends on where
you

4     want to spend your time.  But it's up to you.  But you're
on

5     the radar screen, so the next time around plan to spend

6     substantial amount of time in a federal facility.

7          Pursuant to the Sentencing Reform Act of 1984,
it

8     is the judgment of the court that the defendant, Erik

9     Sanchez, is hereby committed to the custody of the Bureau
of

10    Prisons, to be imprisoned for a term of 46 months.

11         Upon release from imprisonment, Mr. Sanchez
shall

12    be placed on supervised release for a term of two years.

13    Within 72 hours of release from the custody of the Bureau
of

14    Prisons, he shall report in person to the probation
office

15    in the district to which he is released.

16         While on supervised release Mr. Sanchez shall
not

17    commit another federal, state or local crime; shall be

18    prohibited from possessing a gun or other dangerous
device;

19    and shall not possess any illegal controlled substance;
and

20        shall comply with the other standard conditions that have

21        been adopted by this court.

22             Based on the information presented, Mr. Sanchez is

23        excused from the mandatory drug testing provision but may be

24        requested to submit to drug testing during the term of

25        supervision, if the probation officer determines a risk of


                    JOHN KEVIN STONE, CSR

18

1    substance abuse.

2              In addition, he shall comply with the following

3    special conditions:  He shall cooperate with the Immigration

4    and Customs Service resulting from any problems in his

5    status; he shall provide truthful information to the

6    Immigration and Customs Service.

7              If deported, Mr. Sanchez shall not re-enter the

8    United States without permission of the attorney general.

9    If he does re-enter the United States, he shall report to

10   the nearest probation office within 48 hours.

11             He shall cooperate in the collection of DNA with

12   the probation office.

13             I find he does not have the ability to pay the

14   fine, I'll waive the fine.

15             Further ordered he shall pay to the United States a

16   special assessment of $100, which is due immediately.

17             The rationale for the sentence is simple enough.

18   Mr. Sanchez is being sentenced for illegally re-entering the

19   United States after being deported to El Salvador.  He has

20   three prior felony convictions, including a conviction for

21   death by automobile.  He has been twice deported to El

22   Salvador each time.  Very difficult, I'm sure, to be

23     separated from your family.  But I have no choice in

24     imposing the sentence to reflect the fact that he is

25     violating the law.  He has accepted responsibility for his

JOHN KEVIN STONE, CSR

19

1    actions; has acknowledged his wrongdoing; plans to return
to

2    El Salvador, or perhaps another country.

3           Based on all the factors presented, I think the

4    sentence I've imposed satisfies the sentencing criteria
for

5    the purposes of sentencing.  Reflected in that also is
the

6    fact that he will be deported, which is an additional

7    penalty.

8           Is there anything else?

9           MS. JAMPOL:  Nothing, Your Honor.  Thank you.

10          THE COURT:  Thank you.

11          MR. MC CAULEY:  No, Your Honor.  Except if you

12   could recommend the Beaumont facility.

13          THE COURT:  Yes.  That's Beaumont, Texas, I will

14   recommend that.

15          MR. MC CAULEY:  Thank you, Your Honor.

16          THE COURT:  Mr. Sanchez, good luck to you.

17          ( Court adjourned ).

18

19

20

21

22

23

24

25

JOHN KEVIN STONE, CSR