NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGEL COLON, et al., | Hon. Dennis M. Cavanaugh |
| Plaintiffs, | **OPINION** |
| v. | Civil Action No. 08-4439 (DMC)(MF) |
| PASSAIC COUNTY, et al., | |
| Defendants. | |

**DENNIS M. CAVANAUGH, U.S.D.J.**

This matter comes before the Court upon the Settlement Agreement reached between the parties. ECF Nos. 94, 101. After considering the submissions of the parties, and based upon the Fairness Hearing conducted before the Court on April 23, 2012, it is the decision of the Court, for the reasons herein expressed, that the Settlement Agreement is **approved**.

## I.  BACKGROUND

This action was commenced on September 3, 2008 by Plaintiffs Angel Colon, Roy Schmitt, Jubra'eel Lebron, Winifred Gates, Mark Harkings, Matthew Carley, Cecilio Toledano and Andrew Crawfort ("Plaintiffs"), seeking declaratory and injunctive relief on behalf of a class of inmates at the Passaic County Jail ("PCJ"). Plaintiffs are entering into a Settlement Agreement with Passaic County, the Sheriff of Passaic County, the Passaic County Board of Chosen Freeholders and the Warden of PCJ (the "Passaic County Settlement"), and are also entering into a separate Settlement

Agreement with Defendant Gary Lanigan, in his official capacity as Commissioner of the New Jersey Department of Corrections (the "Lanigan Settlement") (collectively, the "Settlement Agreement").

The Complaint was brought pursuant to 24 U.S.C. § 1983 and seeks redress for alleged violations of the First, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. These allegations include complaints that PCJ suffers from (1) overcrowding, leading to a lack of privacy, loss of sleep and the threat of inmate violence; (2) unsanitary living conditions; (3) inadequate medical care; (4) unsafe and inadequate food; (5) inadequate temperature control and ventilation; (6) inadequate clothing; (7) inadequate fire detection and alarm systems; (8) use of excessive force by Correction Officers, including the use of dogs for intimidation; (9) restrictions on religious freedom; and (10) retaliation for airing grievances. Defendants filed Answers denying these allegations. ECF Nos. 14, 47.

On May 28, 2009, this Court entered an Opinion and Order certifying a class of "All persons who are now or will become incarcerated at Passaic County Jail during the pendency of this lawsuit." ECF Nos. 44, 45. Following the entry of that Opinion and Order, the parties exchanged informal discovery, and engaged in extensive settlement negotiations, eventually culminating in the Settlement Agreement that the Court now considers. On January 13, 2012, this Court entered an Order directing notice of the settlement and scheduling a Fairness Hearing. ECF No. 95. On April 16, 2012, Plaintiffs filed a Declaration in support of the Settlement Agreement, and attached communications received from class members regarding the Settlement Agreement. ECF No. 103. On April 23, 2012, during the Fairness Hearing, counsel for both Plaintiffs and Defendants further voiced their approval of the Settlement Agreement. No party present at the Fairness Hearing objected. The matter of the approval of the Settlement Agreement is now before the Court.

## II.   LEGAL STANDARDS

### A.   Settlement Approval

Federal Rule of Civil Procedure 23(e), provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." FED. R. CIV. P. 23(e). In determining whether to approve a class action settlement pursuant to Rule 23(e), "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975) (citation omitted)).

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable." Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999); Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 965 (3d Cir. 1983). In Girsh v. Jepson, the Third Circuit identified nine factors, so-called "Girsh factors," that a district court should consider when making this determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.2d 153, 157 (3d Cir.1975). "These factors are a guide and the absence of one or more does not automatically render the

settlement unfair." In re American Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000). Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under Girsh. See In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 184 (E.D. Pa.1997); see also In re AT&T Corp. Secs. Litig., 455 F.3d 160 (3d Cir. 2006). In sum, the Court's assessment of whether the settlement is fair, adequate and reasonable is guided by the Girsh factors, but the Court is in no way limited to considering only those enumerated factors and is free to consider other relevant circumstances and facts involved in this settlement.

### III. DISCUSSION[1]

1. Complexity, Expense and Likely Duration of Litigation

This factor is concerned with assessing the "probable costs, in both time and money, of continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 234 (3d Cir. 2001). Significant delay in recovery if this case proceeds to trial favors settlement approval. See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1301 (D.N.J. 1995). Plaintiffs note that this litigation has continued for three years since 2008, during which time the parties have spent vast resources consulting experts and conducting discovery. The parties have not yet prepared summary judgment or pre-trial motions, the expense of which this proposed settlement avoids. A delay in the resolution of this case would also postpone the implementation of measures that will help remedy the complained of conditions

---

[1] While this matter encompasses two separate settlement agreements (the Passaic County Settlement and the Lanigan Settlement), in most instances the issues presented are identical. Accordingly, except where noted, the Court does not provide additional duplicative analysis.

at PCJ. Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

2. Reaction of the Class to Settlement

This factor requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable. The Court also notes that the second Girsh factor is especially critical to its fairness analysis, as the reaction of the class "is perhaps the most significant factor to be weighed in considering [the settlement's] adequacy." Sala v. National R.R. Passenger Corp., 721 F. Supp. 80, 83 (E.D. Pa. 1989); Fanning v. AcroMed Corp. (In re Orthopedic Bone Screw Prods. Liab. Litig.), 176 F.R.D. 158, 185 (E.D. Pa. 1997) (stating that a "relatively low objection rate militates strongly in favor of approval of the settlement" (internal citations omitted)). Further, silence constitutes tacit consent to the agreement. The Passaic County Settlement and the Lanigan Settlement had separate objections periods, and accordingly, the Court will address the objections to each settlement separately.

For the Passaic County Settlement, Plaintiffs note that while the class consists of about 1070 inmates, they have received only sixty seven comments regarding the settlement, and of those, only twelve actually voice objections. A number of the comments express gratitude for the efforts to improve the facility. Additionally, many of the comments received complain about the conditions of PCJ itself, which the settlement intends to alleviate. The twelve actual objections generally fall into two main categories: concerns that PCJ will not follow through with the corrections, and comments that PCJ should be closed all together.

For the first concern, the Court notes that the enforcement mechanisms negotiated by the parties have been a substantial focus of the settlement discussions. Susan McCampbell, a

correctional management expert with thirty years of experience, will conduct regular visits to PCJ for monitoring. Further, Plaintiffs' counsel will continue to communicate with the class members about the conditions at PCJ. Accordingly, the Court is not swayed by this concern. As to the objectors' preference for simply closing PCJ, the Court agrees with Plaintiffs' assertion that while this would be an effective means of providing an improved environment for the class, such a result could not reasonably be achieved in light of the Prison Litigation Reform Act, which requires narrowly tailored relief to correct violations of Federal rights, and does not permit some "unrealistic" expectations. See, e.g., Hawker v. Consovoy, 198 F.R.D. 619, 628-31 (D.N.J. 2001).

The Court is also not swayed by the objections that have been filed with respect to the Lanigan Settlement. Plaintiffs' counsel received a total of thirteen comments from class members, and again, the majority voice concerns with the present conditions at PCJ, and not with the Lanigan Settlement itself. Two of the comments express a desire to see PCJ closed, but for the reasons expressed above, the Court does not find any merit to this objection. Another objection to the Lanigan Settlement questions whether bi-annual site inspections will provide a sufficient basis to ensure compliance. The Lanigan Settlement alleviates this concern, however, by providing for additional "site visits" for up to five additional days each year, and by permitting the monitor, at her discretion, to conduct one of the two annual site inspections on an unscheduled basis.

A review of the relatively small number of objections convinces the Court that the overall reaction of the class to the Settlement Agreement is favorable. Further, the objections that have been filed do not convince the Court that the Settlement Agreement is unfair or unreasonable. Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

3. Stage of the Proceedings and Amount of Discovery Completed

For the third Girsh factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. GMC, 55 F.3d at 813. In short, under this factor the Court considers whether the amount of discovery completed in the case has permitted "counsel [to have] an adequate appreciation of the merits of the case before negotiating." In re Schering-Plough/Merck Merger Litig., No. 09-1099, 2010 U.S. Dist. LEXIS 29121 at *30 (Mar. 26, 2010). The discovery analyzed encompasses both formal and "informal" discovery, including discovery from parallel proceedings, companion cases and even third parties, such as experts or witnesses. Id. In this case, the parties have exchanged extensive informal discovery, and Plaintiffs have conducted nearly fifty site visits and reviewed 17,000 pages of documents. Further, the Court notes that efforts of class counsel in this matter warrant particular commendation, both for class counsel's skill in pursuing the matter, and for the amount of time they have devoted to this case. Considering the amount of effort expended by class counsel in this matter, as well as class counsel's extensive experience litigating class actions generally and working on prisoners' rights litigation specifically, the Court is convinced that Plaintiffs have a sufficient understanding of the merits of this case. This factor therefore weighs in favor of approval of the Settlement Agreement.

4.-5. Risks of Establishing Liability and Damages

A trial on the merits always entails considerable risk. Weiss, 899 F. Supp. at 1301. "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than

settle them." GMC, 55 F.3d at 814. "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" In re Safety Components Int'l, 166 F. Supp. 2d 72, 89 (D.N.J. 2001). In this case, while Plaintiffs overcame one motion to dismiss, no motions for summary judgment have been filed, and if Plaintiffs' claims survive that likely impediment, they would still have to face the always risky proposition of a trial. Accordingly, the Court finds that the risks in establishing liability weigh in favor of approval of the Settlement Agreement.[2]

6. Ability of Defendants to Maintain Class Certification

Plaintiffs notes that the class is comprised of "all persons who are now or will become incarcerated at PCJ during the pendency of this lawsuit." Plaintiffs therefore state that they would not have faced any risks in maintaining the class action through trial. Accordingly, the Court does not place significant weight on this factor. See, e.g., Hawker, 198 F.R.D. at 633 ("Although the possibility of decertification would remain if litigation continued, it is not particularly likely. Therefore, this Girsh factor does not play a significant role in the Court's determination whether to approve the Settlement Agreement.").

7. Ability of Defendants to Withstand a Greater Judgment

To evaluate whether the Settlement Agreement is fair to Plaintiffs, the Court must evaluate whether Defendants could withstand a judgment much greater than the amount of the settlement.

---

[2] The damages factor is not applicable as Plaintiffs only sought injunctive relief in this action.

In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121 at *37. Because the settlement agreement provides relief of a non-pecuniary nature, the Court is not in a position to say whether Defendants could withstand a greater judgment. As a result, this factor does not weigh against or in favor of approval. Unite Nat. Retirement Fund v. Watts, No. 04-3603, 2005 WL 2877899, at *4 (D.N.J. Oct. 28, 2005).

8.-9. Reasonableness of the Settlement Fund in Light of the Best Possible Recovery, and in Light of the Attendant Risks of Litigation

"According to Girsh, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth Girsh factor) and a range in light of all the attendant risks of litigation (the ninth factor)." GMC, 55 F.3d at 806. "The last two Girsh factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121 at *38-39. The Settlement Agreement alleviates a substantial amount of the problems motivating this litigation, especially those related to high inmate population and the stress of overcrowding at PCJ. The Settlement Agreement addresses problems related to inadequate ventilation and heating, unhygienic conditions, potentially unsafe food, lack of sufficient clothing, overcrowding, the use of force by correctional officers, and inmates' medical and psychiatric conditions. The Court has reviewed the Settlement Agreement's proposed solutions to these problems, and finds that they provide a substantial benefit to the class. Accordingly, the last two Girsch factors weigh in favor of approval of the Settlement Agreement.

10. Summary of Factors

In sum, the Court finds that a balancing of the Girsch factors weighs in favor of approval of the Settlement Agreement. The Court further emphasizes the overwhelming class approval for the Settlement Agreement. Additionally, the Court notes that the Settlement Agreement was reached as the result of extensive, arms length negotiation between experienced and skilled counsel. The rights of inmates may not always be at the forefront of tax payers' minds, especially in the current political and economic climate, but it is with the efforts of counsel for both parties, and with the efforts of the Honorable Mark Falk, U.S.M.J., that this matter has been brought to an appropriate resolution. The Court finds that the Settlement Agreement is fair, adequate, reasonable, and in the best interests of the class. Accordingly, the Court approves the Settlement Agreement.

## IV. CONCLUSION

For the foregoing reasons, the Court **approves** the Settlement Agreement. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: April 24, 2012
Orig.: Clerk
cc: All Counsel of Record
Hon. Mark Falk, U.S.M.J.
File